POLSINELLI LLP
Noel Cohen (SBN 219645)
ncohen@polsinelli.com
Starr Drum (SBN 336691)
sdrum@polsinelli.com
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone:   (310) 556-1801
Facsimile:    (310) 556-1802

POLSINELLI PC
Shundra Manning (*pro hac vice* forthcoming)
scmanning@polsinelli.com
501 Commerce Street, Suite 1300
Nashville, TN 37203
Telephone:   (615) 259-1535
Facsimile:    (615) 658-9647

*Attorneys for Defendant KD Creatives, Inc. d/b/a Big Little Feelings*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNIFER CARRUTH, individually and on behalf of all others similarly situated**,**<br><br>                              Plaintiff,<br><br>     v.<br><br>KD CREATIVES, INC. D/B/A BIG LITTLE FEELINGS,<br><br>                              Defendant. | Case No. 2:24-cv-02484<br><br>**DEFENDANT KD CREATIVE, INC. D/B/A BIG LITTLE FEELINGS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Filed Concurrently With:<br>(1)   Declaration of Lisa Carll;<br><br>Date:         February 3, 2025<br>Time:         1:30 p.m.<br>Courtroom: 4<br>Judge:        Judge Dale A. Drozd |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 3, 2025 at 1:30 p.m., or as soon thereafter as counsel may be heard in the above-entitled court, located at the Robert T. Matsui United States Courthouse, 501 I Street Sacramento, CA  95814, Defendant KD Creatives, Inc. d/b/a Big Little Feelings ("BLF") will and hereby does move this Court for an order compelling this action to

arbitration pursuant to the arbitration agreement entered into between BLF and Plaintiff Jennifer Carruth ("Plaintiff"). BLF also seeks dismissal of this action or a stay of all proceedings in this Court pending completion of the arbitration.

This Motion is being made pursuant to 9 U.S.C. §§ 3 and 4, and on the grounds that Plaintiff entered into a valid and binding written agreement requiring arbitration of ***all*** claims alleged in this action.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Lisa Carll, including the exhibit attached thereto, the records and files in this action, and such further evidence and arguments as may be presented prior to or at the hearing on this Motion.

## MEET AND CONFER CERTIFICATION

I hereby certify that counsel for BLF met and conferred with counsel for Plaintiff multiple times via email regarding the basis for the filing of this motion. As part of the conferral, BLF provided Plaintiff with the relevant arbitration provisions. The parties could not agree on a resolution.

Dated: December 6, 2024

**POLSINELLI LLP**

By: */s/ Starr Drum*
Noel Cohen
Starr Drum
Shundra Manning (*pro hac vice* forthcoming)

*Attorneys for Defendant KD Creatives, Inc. d/b/a Big Little Feelings*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff's claims cannot remain in this forum because she entered a valid and enforceable arbitration agreement. On September 12, 2024, Plaintiff Jennifer Carruth ("Plaintiff") filed her complaint against Defendant KD Creatives, Inc. d/b/a Big Little Feelings ("BLF"). The Complaint alleges a single cause of action against BLF: violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA").

Plaintiff filed in the wrong forum. BLF's Terms and Conditions of Use for KD Creatives, Inc. DBA Big Little Feelings ("Terms of Service") contain an "Arbitration Agreement; Class Waiver; Jury Waiver" provision (the "Arbitration Agreement") that expressly covers all claims asserted here and requires that any disputes arising from Plaintiff's use of BLF's website, and the related products and services offered through the website, be resolved exclusively through binding arbitration. The Arbitration Agreement is valid and enforceable pursuant to the Federal Arbitration Act ("FAA"). Accordingly, Defendants respectfully request that the Court grant the Motion to Compel Arbitration and stay or dismiss the case until the completion of arbitration. Alternatively, should the Court decide the FAA does not govern the arbitration provisions at-issue, the agreement nonetheless should be enforced under California law.

**II.    BRIEF FACTUAL SUMMARY**

BLF offers courses to parents and caretakers about how to thrive during the toddler and preschooler years. (Declaration of Lisa Carll ("Carll Decl.") ¶ 3.) BLF sells its courses through its website, www.biglittlefeelings.com. (*Id*.) On January 10, 2023, while logged into her Facebook account on a mobile device, Plaintiff clicked on an advertisement for BLF's courses. (*Id*. ¶ 4.) After Plaintiff clicked on the Facebook advertisement, she was routed to BLF's website, where she then purchased a bundle of courses from BLF. (*Id*. ¶ 5.) When Plaintiff made her purchase, Plaintiff was presented with the following text immediately below the "Checkout" button: "By placing your order, you agree to our <u>Terms of Service</u> and <u>Privacy Policy</u>." (*Id.* ¶ 6.) Both "Terms of Service" and "Privacy Policy" are hyperlinked to BLF's Terms of Service and Privacy Policy,

respectively. (*Id*. ¶ 7.) BLF sent Plaintiff an email with a receipt of her purchase after she placed it. (*Id*. ¶ 9.) That email stated that Plaintiff would receive a separate email inviting her to set up an account in order to start her course. (*Id*.) Plaintiff was then sent two emails from BLF, both of which stated, "By logging in, you agree to our Terms of Service and Privacy Policy." (*Id*.) BLF is not aware of any means by which users can set up an account other than by clicking on the "Login" links within the emails sent by BLF (*Id*. ¶ 10.) BLF's records reflect that Plaintiff initially logged into her account on January 10, 2023. (*Id*. ¶ 11.)

The Terms of Service contain an "Arbitration Agreement; Class Waiver; Jury Waiver" provision (the "Arbitration Agreement"). (Carll Decl. at Ex. 1.)

The Arbitration Agreement reads in pertinent part as follows:

> If you and Big Little Feelings are unable to resolve a dispute or potential claim by means of good-faith negotiation, then you agree to resolve any such dispute through arbitration.
>
> PLEASE READ THE FOLLOWING ARBITRATION AGREEMENT CAREFULLY BECAUSE IT REQUIRES YOU AND BIG LITTLE FEELINGS TO AGREE TO RESOLVE ALL DISPUTES THROUGH BINDING INDIVIDUAL ARBITRATION, UNLESS OTHERWISE NOTED.
>
> **Applicability of Arbitration Agreement.** All claims and disputes (excluding claims for injunctive or other equitable relief as set forth below) in connection with the Agreement, including the Terms, that cannot be resolved informally or in small claims court shall be resolved, to the extent permitted by applicable law, by binding arbitration on an individual basis under the terms of this Arbitration Agreement. This Arbitration Agreement applies to you and Big Little Feelings, and to any subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or goods provided under the Terms.
>
> **Notice Requirement and Informal Dispute Resolution.** Before either party may seek arbitration, the party must first send to the other party a written Notice of Dispute ("Notice") describing the nature and basis of the claim or dispute, and the requested relief. A Notice to Big Little Feelings should be sent to: 11967 Nebraska Ave, #4, Los Angeles, CA 90025. Attention: Legal. After the Notice is received, you and Big Little Feelings may attempt to resolve the claim or dispute informally. If you and Big Little Feelings do not resolve the claim or dispute within 30 days after the Notice is received, either party may begin an arbitration proceeding. The amount of any settlement offer made by any party may not be disclosed to the

arbitrator until after the arbitrator has determined the amount of the award, if any, to which either party is entitled.

**Arbitration Rules.** Arbitration shall be initiated through the American Arbitration Association ("AAA"), an established alternative dispute resolution provider ("ADR Provider") that offers arbitration as set forth in this section. If AAA is not available to arbitrate, the parties shall agree to select an alternative ADR Provider. The rules of the ADR Provider shall govern all aspects of this arbitration, including but not limited to the method of initiating and/or demanding arbitration, except to the extent such rules conflict with the Terms. The AAA Consumer Arbitration Rules ("Arbitration Rules") governing the arbitration are available online at www.adr.org or by calling the AAA at 1-800-778-7879. The arbitration shall be conducted by a single, neutral arbitrator. Any claims or disputes where the total amount of the award sought is less than ten thousand U.S. Dollars (US $10,000.00) may be resolved through binding non-appearance-based arbitration, at the option of the party seeking relief. For claims or disputes where the total amount of the award sought is ten thousand U.S. Dollars (US $10,000.00) or more, the right to a hearing will be determined by the Arbitration Rules. Any hearing will be held in the city of Los Angeles, California, unless the parties agree otherwise. Any judgment on the award rendered by the arbitrator may be entered in any court of competent jurisdiction.

**Additional Rules for Non-Appearance Based Arbitration.** If non-appearance arbitration is elected, the arbitration shall be conducted by telephone, online, and/or based solely on written submissions; the specific manner shall be chosen by the party initiating the arbitration.

**Authority of Arbitrator.** If arbitration is initiated, the arbitrator will decide the rights and liabilities, if any, of you and Big Little Feelings, and the dispute will not be consolidated with any other matters or joined with any other cases or parties. The arbitrator shall have the authority to grant motions dispositive of all or part of any claim. The arbitrator shall have the authority to award monetary damages and to grant any non-monetary remedy or relief available to an individual under applicable law, the AAA Rules, and the Terms. The arbitrator shall issue a written award and statement of decision describing the essential findings and conclusions on which the award is based, including the calculation of any damages awarded. The arbitrator has the same authority to award relief on an individual basis that a judge in a court of law would have. The award of the arbitrator is final and binding upon you and Big Little Feelings.

(Carll Decl. at Ex. 1.) Additionally, the Arbitration Agreement provides the following class action waiver:

**Waiver of Class or Consolidated Actions.** ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED OR LITIGATED ON AN INDIVIDUAL BASIS AND NOT ON

A CLASS BASIS, AND CLAIMS OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER.

(*Id.*)

The Arbitration Agreement also contains the following jury waiver:

**Waiver of Jury Trial.** THE PARTIES HEREBY WAIVE THEIR CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR A JURY, instead electing that all claims and disputes shall be resolved by arbitration under this Arbitration Agreement, excluding claims for injunctive or other equitable relief as set forth below. Arbitration procedures are typically more limited, more efficient, and less costly than court proceedings and are subject to very limited review by a court. If any litigation should arise between you and Big Little Feelings in any state or federal court in a suit to vacate or enforce an arbitration award or otherwise, YOU AND BIG LITTLE FEELINGS WAIVE ALL RIGHTS TO A JURY TRIAL, instead electing that the dispute be resolved by a judge.

(*Id.*)

## III. LEGAL STANDARD

It is governing law that:

When a party moves to compel arbitration, a district court's role is limited 'to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.' *Johnson v. Walmart Inc.*, 57 F.4th 677, 680 (9th Cir. 2023) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If the answer to both questions is 'yes,' the district court must enforce the arbitration agreement in accordance with its terms; there is no place for discretion by the district court. *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020). . . . 'When determining whether parties have agreed to submit to arbitration, courts apply state-law principles of contract formation and interpretation.' *Suski v. Coinbase*, Inc., 55 F.4th 1227, 1230 (9th Cir. 2022). The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that the parties formed an agreement to arbitrate.

*Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1108–09 (E.D. Cal. 2023).

## IV. LEGAL ARGUMENT

### A. Plaintiff and BLF Entered a Valid and Enforceable Arbitration Agreement Covering Plaintiff's VPPA Claim.

Courts refer to state law contract principles to determine whether a valid agreement to arbitrate exists. (*Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022), *aff'd*, 602 U.S. 143

(2024) ["When determining whether parties have agreed to submit to arbitration, courts apply state-law principles of contract formation and interpretation."]; *Craig v. Brown & Root, Inc.* (2000) 84 Cal. App. 4th 416, 420 ["General principles of contract law determine whether the parties have entered a binding agreement to arbitrate."].) "[A]rbitration agreements [are] on an equal footing with other contracts", and therefore courts must "enforce them according to their terms[.]" (*Rent-A-Ctr., W., Inc. v. Jackson* (2010) 561 U.S. 63, 67; *see also Harris v. TAP Worldwide, LLC* (2016) 248 Cal. App. 4th 373, 383 ["[O]ne who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language"].)

Plaintiff consented to the Arbitration Agreement by purchasing courses through BLF's website and by logging in to her account. (Carll Decl. ¶¶ 6–7, 9–10.) Additionally, Plaintiff's claims fall directly within the scope of the Arbitration Agreement and should be submitted to binding arbitration in accordance with federal and California law. The Arbitration Agreement specifically states that it applies to, **"[a]ll claims and disputes** . . . **in connection with the Agreement, including the Terms**, that cannot be resolved informally or in small claims court shall be resolved, to the extent permitted by applicable law, by binding arbitration on an individual basis under the terms of this Arbitration Agreement." (Carll Decl. at Ex. 1.) (emphasis added.) The Terms of Service govern Plaintiff's use of BLF's "website at www.biglittlefeelings.com (the "Site"), Big Little Feelings-controlled social media pages (including Facebook, Instagram, and Twitter), and the related services and products offered by Big Little Feelings through the Site." (*Id.*)

The facts and conduct alleged by Plaintiff against BLF relate to her use of BLF's website and products. Plaintiff specifically alleges that "Defendant has systematically transmitted (and continues to transmit today) its purchasers' personally identifying video viewing information to Meta using a snippet of programming code called the 'Meta Pixel,' which Defendant chose to install on its biglittlefeelings.com website." (Compl. ¶ 2.) Plaintiff also alleges, "[w]hen Plaintiff purchased prerecorded video material from Defendant on its website, Defendant disclosed to Meta Plaintiff's FID coupled with the specific title of the video she purchased (as well as the URL where

such video is available for purchase), among other information concerning Plaintiff and the device on which she used to make the purchase." (Compl. ¶ 11.)

Plaintiff's VPPA claim is entirely premised on allegations that BLF installed the Meta Pixel technology on its website and transmitted Plaintiff's personally identifying information to Meta when she purchased prerecorded video content from BLF. (*See*, *e.g.*, Compl. ¶¶ 2, 42, 52, 56, 72.) As such, Plaintiff's claim that BLF violated the VPPA arises from her use of Big Little Feelings' website and products, and thus falls under the Arbitration Agreement.

In sum, a valid arbitration agreement exists, and Plaintiff's VPPA claim is entirely encompassed by and subject to it.

### B. The Federal Arbitration Act Applies to the Arbitration Provision and Favors Enforcement of Arbitration.

The Arbitration Agreement between BLF and Plaintiff is governed by the FAA. The FAA governs any written arbitration agreement where the agreement "evidenc[es] a transaction involving commerce" and such agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract … ."  (9 U.S.C. § 2.) The purpose of the FAA is "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 344 [*Concepcion*].) Indeed, the Supreme Court has described the FAA as "embod[ying] [a] national policy favoring arbitration, [citation omitted] and a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." (*Id*. at 346 [internal quotations omitted].)  As such, "[t]he [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." (*Dean Whitter Reynolds, Inc. v. Byrd* (1985) 470 U.S. 213, 221.)

Here, the Arbitration Agreement evidences a transaction involving commerce. The Supreme Court has held that the term "involving commerce" is interpreted broadly, so that the FAA governs any arbitration agreement that affects commerce in any way. (*See Allied- Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 273-74 ["*Allied-Bruce Terminix Companies, Inc."*] ["[T]he word 'involving' is broad and is indeed the functional equivalent of

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
(310) 556-1801

'affecting.'"].) As an online business that sells products through its website (Carll Decl. ¶ 3), BLF is engaged in interstate commerce. (*United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ["[a]s both the means to engage in commerce and the method by which transactions occur, 'the Internet is an instrumentality and channel of interstate commerce.'"].)

Further, the Arbitration Agreement is valid, irrevocable, and enforceable. "Contracts formed on the Internet come primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." (*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014).) "[T]he determination of the validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." (*Id.* at 1176.)

Here, Plaintiff had constructive knowledge of the Arbitration Agreement through a browsewrap agreement. As stated by the Ninth Circuit in *Nguyen*:

> Courts have also been more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement—that is, where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website. *See, e.g., Zaltz v. JDATE,* 952 F.Supp.2d 439, 451–52 (E.D.N.Y.2013) (enforcing forum selection clause where prospective members had to check box confirming that they both read and agreed to the website's Terms and Conditions of Service to obtain account); *Fteja,* 841 F.Supp.2d at 838–40 (enforcing forum selection clause in website's terms of service where a notice below the "Sign Up" button stated, "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service," and user had clicked "Sign Up").

(*Id.* at 1176–77.) Thus, where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have enforced browsewrap agreements. (*See id.* at 1177.)

Additionally, "the conspicuousness and placement of the "Terms of Use" hyperlink, other notices given to users of the terms of use, and the website's general design" all contribute to

"whether a reasonably prudent user would have inquiry notice of a browsewrap agreement." (*Id.*) For example, in *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir. 2020), the Ninth Circuit found that TurboTax's users were on notice of its terms of use when upon logging in to TurboTax's website, users were required to click a "Sign In" button, directly under which the following language appeared: "*By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy Statement.*" (*Dohrmann*, 823 F. App'x at 484.) The Ninth Circuit held that this text constituted an affirmative acknowledgement that continued use will act as a manifestation of the user's intent to be bound. (*Id.*) The court also held that the language and text to the terms of use was conspicuous, because the language and hyperlink "were the only text on the webpage in italics, were located directly below the sign-in button, and the sign-in page was relatively uncluttered." (*Id.*)

Similarly, in *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393 (9th Cir. 2020), the Ninth Circuit held that Ticketmaster's website provided sufficient notice for constructive assent when each time plaintiff clicked the "Sign In" button, three lines below the button, the website displayed the phrase, "By continuing past this page, you agree to our Terms of Use", and when each time he clicked the "Place Order" button, directly above the button, the website displayed the phrase, "By clicking 'Place Order,' you agree to our Terms of Use." (*Lee*, 817 F. App'x at 394–95.) In both instances, the phrase "Terms of Use" was displayed in blue font and contained a hyperlink. (*Id.* at 395.)

These concepts apply equally to the enforcement of arbitration provisions in VPPA cases. (*See Ghazizadeh v. Coursera, Inc.*, No. 23-CV-05646-EJD, 2024 WL 3455255 (N.D. Cal. June 20, 2024).) In *Ghazizadeh*, plaintiff brought a VPPA claim against Coursera, an educational technology company that provides various prerecorded educational courses via its interactive online platform. (*Id.* at *1.) On the 2015 Sign Up-Screen, immediately below the "Sign Up" button is a phrase that states "By creating an account, I accept Coursera's Terms of Service and Honor Code." (*Id.* at *6.) The 2015 Terms of Service did not have an arbitration provision, but the agreement had a continuing use clause which the court held bound plaintiff to an arbitration

provision that was later added. (*Id*. at *5, *12–13.) Evaluating the context of the notice and its visual placement, the court ultimately held that the 2015 Sign Up-Screen provided conspicuous notice of the terms. (*Id*. at *10.) Concerning the context of the notice, the court held that "users of Coursera's services, a platform that offers online educational courses via pre-recorded videos, would [] expect (or should expect) their access to the platform would be continual and governed by some terms of use." (*Id*. at *7.) The court also held that the notice was reasonably conspicuous because the hyperlinked terms were bolded, the notice was displayed directly below the action button, and the hyperlink appeared on a screen that was not cluttered. (*Id*. at *10.) The court further held that plaintiff unambiguously manifested assent to the terms of use on the 2015 Sign-Up Screen by clicking the "Sign Up" button. (*Id*. at *11.)

Here, Plaintiff manifested affirmative consent to the Terms of Service on two separate occasions. First, Plaintiff assented to the Terms of Service by clicking the "Checkout" button. (*See* Carll Decl. ¶ 6.) Immediately below the "Checkout" button is an acknowledgment that "By placing your order, you agree to our Terms of Service and Privacy Policy." (*Id*. ¶ 6.) Second, after Plaintiff placed her order, she received two separate emails providing the login link for her course. (*Id*. ¶ 9.) Immediately below the "Login" button is an acknowledgement that states "By logging in, you agree to our Terms of Service and Privacy Policy." (*Id*. ¶ 9.) BLF is not aware of any means by which Plaintiff could set up an account other than by clicking on the "Login" links within the emails sent by BLF. (*Id*. ¶ 10.) Plaintiff did indeed log in to her account on January 10, 2023. (*Id*. ¶ 11.) Further, the Terms of Service are conspicuous. On both the checkout page and in the emails, "Terms of Service" is linked and underlined. (*See id*. ¶¶ 6, 9.) In the emails, the "Terms of Service" is also in blue text, whereas the remainder of the text, excluding the linked email address for Plaintiff to contact BLF in one of the emails, is in black text. (*See id*. ¶ 9.) Additionally, the checkout screen and the emails that Plaintiff received both lack clutter. (*See id*. ¶ 6, 9.) Accordingly, the totality of the circumstances demonstrate that Plaintiff had constructive notice of the Terms of Service.

Thus, the Arbitration Agreement is a valid and enforceable agreement evidencing a transaction involving commerce and is therefore enforceable under the FAA.

### C. Like the FAA, California Law Requires Arbitration of Plaintiff's Claims.

Application of California law dictates the same outcome. In California, "arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (*Armendariz v. Found. Health Psychcare Servs.*, Inc. (2000) 24 Cal. 4th 83, 98.) Arbitration is the preferred forum for resolution of parties' disputes and any doubts concerning the arbitrability of disputes must be resolved in favor of arbitration:

> Because California has a strong public policy in favor of arbitration, … arbitration should be ordered unless the agreement clearly does not apply to the dispute in question. Doubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration.

(*Vianna v. Doctors' Mgmt. Co*. (1994) 27 Cal. App. 4th 1186, 1189 [internal citations and punctuation omitted]; *see also Peng v. First Republic Bank* (2013) 219 Cal. App. 4th 1462, 1468 ["[T]he Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' . . . Consequently, courts will indulge every intendment to give effect to such proceedings."].) The Court should "order arbitration if it determines that an arbitration agreement exists … without regard to the substantive merit of [Plaintiff's] claims." (*Sauter v. Sup. Ct.* (1969) 2 Cal. App. 3d 25, 28.)

Here, the Arbitration Agreement between BLF and Plaintiff is valid. (*See supra* section IV(B).) Proper application of California law requires arbitration of any valid agreement to arbitrate. Thus, BLF's Terms of Service is subject to California law mandating the enforcement of the arbitration provision within the agreement.

### D. Plaintiff Waived the Right to Pursue a Class Action Lawsuit.

The Arbitration Agreement also expressly provides that Plaintiff must submit her claims on an *individual* basis to binding arbitration. The Arbitration Provision states, in pertinent part: ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED OR LITIGATED ON AN INDIVIDUAL BASIS AND

NOT ON A CLASS BASIS, AND CLAIMS OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER. (Carll Decl. at Ex. 1.) Because these waivers are enforceable under the FAA and California law, where an arbitration agreement prohibits a plaintiff from asserting class claims, the Court must compel Plaintiff to arbitration on an individual basis. (*See Concepcion*, *supra*, 563 U.S. 333, 339–52 [affirming enforcement of class action waivers and holding that the FAA displaces a conflicting state rule]; *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 976 (N.D. Cal. 2015) ["The Ninth Circuit has expressly endorsed sending individually named plaintiffs' claims to arbitration despite class allegations, and has found class waivers in arbitration agreements enforceable." [citing *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1226 (9th Cir.2013)]]; *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 [abrogated on other grounds] [finding a state's refusal to enforce a class action waiver was preempted by the FAA]; *Kinecta Alt. Fin. Sol., Inc. v. Super. Ct.* (2012) 205 Cal. App. 4th 506, 510-11 [abrogated on other grounds] [dismissing class action allegations from the complaint because arbitration agreement did not provide for class proceedings].)

### E.     Plaintiff's Jury Demand Should be Stricken.

The Arbitration Agreement includes a waiver of jury trial which expressly states, "THE PARTIES HEREBY WAIVE THEIR CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR A JURY". (Carll Decl. at Ex. 1.) Given this plain and express waiver, Plaintiff's demand for a jury trial should be stricken.

### F.     Plaintiff's Claims Should Be Stayed or Dismissed Pending Completion of Arbitration.

Finally, the instant suit should be stayed or dismissed pending completion of arbitration. The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
(310) 556-1801

has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. A stay may be appropriate to avoid the "duplication of effort" when "the type of controversy . . . seems one well-suited to the informal, and often expeditious, proceedings which generally characterize arbitration." (*U.S. for Use & Benefit of Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985); *see also Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 693 ["A stay is appropriate where '[i]n the absence of a stay, the continuation of the proceedings in the trial court disrupts the arbitration proceedings and can render them ineffective.'"].)

Importantly, when all claims in a complaint are within the scope of an arbitration agreement, the court may dismiss the entire action instead of issuing a stay. (*See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014) ["We have held that, notwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration."].) Continuation of any proceedings in court would be disruptive to the arbitration of Plaintiff's VPPA claim. Further, allowing court proceedings to continue during arbitration would waste both the Court's and the parties' resources, and diminish the effectiveness and efficiency that arbitration was meant to achieve.

Accordingly, all further proceedings should be stayed, or this action should be dismissed, to allow for completion of a binding arbitration.

## V. CONCLUSION

Based on the foregoing, the parties undoubtedly entered into a binding agreement to arbitrate all disputes. BLF thus respectfully requests that this Court grant the motion in its entirety, dismiss all class claims, order Plaintiff to submit her individual claims to binding arbitration, strike Plaintiff's demand for a jury trial, and stay or dismiss the case pending the completion of the arbitration of Plaintiff's claims.

Dated:  December 6, 2024 **POLSINELLI LLP**

By */s/ Starr Drum*
Noel Cohen
Starr Drum
Shundra Manning (*pro hac vice* forthcoming)
*Attorney for Defendant*
KD Creatives, Inc. d/b/a/ Big Little Feelings