Frank S. Hedin (SBN 291289)
Hedin LLP
535 Mission Street, 14th Floor
San Francisco, CA 94105
Telephone:   (305) 357-2107
Facsimile:   (305) 200-8801
E-Mail:      fhedin@hedinllp.com

*Attorney for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER CARRUTH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KD CREATIVES, INC. D/B/A BIG LITTLE FEELINGS,<br><br>Defendant. | Case No.<br>2:24−CV−02484−DAD−SCR<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Complaint filed: Sept. 12, 2024<br>Hearing: February 3, 2025<br>Time: 1:30 p.m.<br>Courtroom: 4<br>District Judge: Hon. Dale A. Drozd |

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

Table of Authorities……………………………………………………………… iiii

I.    Introduction ...................................................................................... 1

II.   Factual Background.......................................................................... 3

III.  Legal Standard ................................................................................ 4

IV.   Argument ......................................................................................... 4

   Conclusion ......................................................................................... 22

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

# **TABLE OF AUTHORITIES**

## **CASES**

*Applebaum v. Lyft, Inc.*,
    263 F. Supp. 3d 454 (S.D.N.Y. 2017)................................................................14

*Berkson v. Gogo LLC*,
    97 F. Supp. 3d 359 (E.D.N.Y. 2015). ..............................................................14

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022). ...................................................................17, 20

*Berman v. Freedom Fin. Network, LLC*,
    No. 18-CV-01060-YGR, 2020 WL 5210912 (N.D. Cal. Sept. 1, 2020). .........18

*Boardman v. Pac. Seafood Group*,
    822 F.3d 1011 (9th Cir. 2016). ..........................................................................4

*Colgate v. JUUL Labs, Inc.*,
    402 F. Supp. 3d 728 (N.D. Cal. 2019) ......................................................17, 19

*Cullen v. Shutterfly Lifetouch, LLC*,
    No. 20-CV-06040-BLF, 2021 WL 2000247 (N.D. Cal. May 19, 2021). .........17

*Daschbach v. Rocket Mortg., LLC*,
    No. 22-CV-346-JL, 2023 WL 2599955 (D.N.H. Mar. 22, 2023)....................12

*Dohrmann v. Intuit, Inc.*,
    823 F. App'x 482 (9th Cir. 2020)......................................................................20

*Feldman v. Google, Inc.*,
    513 F.Supp.2d 229 (E.D. Pa. 2007). ...............................................................13

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995).........................................................................................5

*Fisher v. Sutton Place/Pinnacle A.M.S.*,
    No. 1:07-CV-1537-DFH-WTL, 2008 WL 2095417 (S.D. Ind. May 16, 2008).18

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

*Gaker v. Citizens Disability, LLC*,
　　No. 20-CV-11031-AK, 2023 WL 1777460 (D. Mass. Feb. 6, 2023)...11, 12, 13

*Ghazizadeh v. Coursera, Inc.*,
　　No. 23-CV-05646-EJD, 2024 WL 3455255 (N.D. Cal. June 20, 2024)...........21

*Hansen v. LMB Mortg. Servs., Inc.*,
　　1 F.4th 667 (9th Cir. 2021). ...............................................................22

*Hergenreder v. Bickford Senior Living Grp., LLC*,
　　656 F.3d 411 (6th Cir. 2011). ...............................................................5

*Hines v. Overstock.com, Inc.*,
　　380 F. App'x 22 (2d Cir. 2010). ..........................................................12

*Hines v. Overstock.com, Inc.*,
　　668 F. Supp. 2d 362 (E.D.N.Y. 2009). .............................................12

*IT Strategies Grp., Inc. v. Allday Consulting Grp., L.L.C.*,
　　975 F. Supp. 2d 1267 (S.D. Fla. 2013). .............................................12

*Lee v. Ticketmaster L.L.C.*,
　　817 F. App'x 393 (9th Cir. 2020)........................................................20

*Meyer v. Uber Technologies, Inc.*,
　　868 F.3d 66 (2d Cir. 2017).............................................................7, 8

*Nguyen v. Barnes & Noble Inc.*,
　　763 F.3d 1171 (9th Cir. 2014). .......................................................7, 16

*Nicosia v. Amazon.com, Inc.*,
　　834 F.3d 220 (2d Cir. 2016).......................................7, 10, 15, 16

*Norcia v. Samsung Telecommunications Am., LLC*,
　　845 F.3d 1279 (9th Cir. 2017). ...........................................................5

*Porreco v. Red Top RV Center*,
　　216 Cal. App. 3d 113 (1989). ...........................................................5

iv

*Ramirez v. Trusper, Inc.*,
    No. 5:24-CV-02012-EJD, 2024 WL 4479862 (N.D. Cal. Oct. 11, 2024). ....... 18

*Redbox Automated Retail, Inc.*,
    No. 19-cv-01993 at 15 (ECF No. 32) (N.D. Ill. Mar. 25, 2021) ...................... 17

*Route App, Inc. v. Heuberger*,
    No. 2:22-CV-291-TS-JCB, 2022 WL 2316377, at \*3 (D. Utah June 28, 2022) 7

*Saeedy v. Microsoft Corp.*,
    No. C24-0219-SKV, 2024 WL 4945106 (W.D. Wash. Nov. 21, 2024). .......... 21

*Sanford v. MemberWorks, Inc*.,
    483 F.3d 956 (9th Cir. 2007). ........................................................................ 4

*Sellers v. JustAnswer LLC*,
    73 Cal. App. 5th 444, 289 Cal. Rptr. 3d 1 (2021) ........................................... 18

*Sgouros v. TransUnion Corp*,
    817 F.3d 1029 (7th Cir. 2016). ......................................................... 8, 11, 12, 13

*Specht v. Netscape Commc'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002) .................................................................... 12, 13

*Starkey v. G Adventures, Inc.*,
    796 F.3d 193 (2d Cir. 2015) .......................................................................... 16

*Sullivan v. All Web Leads, Inc.*,
    No. 17 C 1307, 2017 WL 2378079 (N.D. Ill. June 1, 2017). .............. 10, 11, 13

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., In*c.,
    925 F.2d 1136 (9th Cir. 1991). .................................................................. 4, 5

*Treinish v. iFit Inc.*,
    No. 23-55207, 2023 WL 5674594 (9th Cir. Aug. 4, 2023) ............................ 18

*Treinish v. iFit Inc.*,
    No. CV 22-4687-DMG (SKX), 2023 WL 2230431 (C.D. Cal. Feb. 2, 2023). 18

v

*Wilson v. Redbox Automated Retail, LLC*,
       448 F. Supp. 3d 873 (N.D. Ill. 2020). .................................................. 17

**STATUTES**

Cal. Civ. Code § 1550 .......................................................................................... 5

Federal Arbitration Act,
       9 U.S.C. §§ 1-16 (2024). ............................................................... 4, 22

Video Privacy Protection Act,
       18 U.S.C. § 2710. ......................................................................... 1, 3

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

1    Plaintiff Jennifer Carruth submits this response in opposition to the Motion to

2  Compel Arbitration (ECF No. 10 (the "Motion" or "Mot.")) filed by Defendant KD

3  Creatives, Inc. d/b/a Big Little Feelings.

4  **I.    INTRODUCTION**

5    In this consumer class action, Plaintiff alleges that Defendant disclosed to Meta

6  Platforms, Inc. ("Meta") information revealing that Plaintiff requested or obtained

7  specific audio-visual materials from Defendant's website, in violation of the Video

8  Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA").  Hoping to duck class-wide

9  liability, Defendant now moves to compel individual arbitration.  The Motion is

10  without merit.

11    Arbitration is a matter of contract.  Plaintiff cannot be compelled to arbitrate

12  unless Defendant proves the existence of a duly-formed agreement to arbitrate.  In the

13  Motion, Defendant says that Plaintiff, by making a purchase on Defendant's website,

14  manifested her assent to the website's Terms of Service ("TOS"), including its

15  incorporated arbitration provision.  In support, Defendant submits a screenshot of its

16  website's "checkout flow," as it appeared when loaded on a web browser on a desktop

17  computer, as well as copies of two e-mails that Defendant says it sent to Plaintiff

18  following her purchase on its website.  But neither the screenshot nor the e-mails

19  submitted by Defendant come anywhere close to establishing that Plaintiff manifested

20  her assent – an essential element to contract formation – to the TOS when she made

1

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

1  her purchase.

2      For one thing, Plaintiff used a mobile device, not a desktop computer, to make

3  her purchase, and the checkout screen of Defendant's website – when accessed on a

4  mobile device (unlike on a desktop computer) does not display any content below the

5  "Checkout" button when the screen loads.  Rather, Plaintiff (or any other visitor

6  accessing the checkout screen on a mobile device) would have had to scroll down on

7  the screen past the "Checkout" button to reveal whether any language existed below

8  the button – even though there was plainly no reason for Plaintiff (or any other

9  reasonable consumer accessing the screen on a mobile device) to scroll below the

10  "Checkout" button prior to pressing the button to complete her purchase.  But even if

11  the language below the button was visible to Plaintiff when the checkout screen loaded

12  on her mobile device – and it did not – the statement appearing below the button is

13  such a small font type (in comparison to the surrounding text and graphics) that it could

14  not provide Plaintiff (nor any other reasonable consumer visiting the page) reasonably

15  conspicuous notice that by pressing the "Checkout" button, Plaintiff was agreeing to

16  be bound by the TOS.    Either way, the Motion fails to demonstrate that Plaintiff

17  received clear and conspicuous notice of the statement appearing below the button

18  before she pressed the button to place her order – and, consequently, fails to establish

19  that Plaintiff manifested her assent to be bound by the TOS by pressing the "Checkout"

20  button to place an order on Defendant's website.

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

1    The post-purchase e-mails Defendant has submitted in support of the Motion do

2   not demonstrate that Plaintiff assented to the TOS either.   In support of the instant

3   opposition brief, Plaintiff submits a sworn declaration accompanied by copies of the

4   e-mails she actually received from Defendant, which are completely different from the

5   emails submitted by Defendant and which do not even mention, let alone link to, or

6   much less advise Plaintiff that she is in any way agreeing to the TOS.

7    Defendant has failed to satisfy its burden of demonstrating that Plaintiff assented

8   to the TOS on Defendant's website.   The Motion should be denied.

9   **II.    FACTUAL BACKGROUND**

10    On September 12, 2024, Plaintiff commenced this class action against

11   Defendant for violation of the VPPA. (ECF No. 1.)  The Complaint alleges that, during

12   the applicable limitation period, Defendant disclosed to Meta the "personally

13   identifiable information" of Plaintiff and its other customers, revealing the specific

14   video products that each of them requested or obtained on Defendant's website, via the

15   "Meta Pixel" technology that Defendant chose to install on its website.  *See* 18 U.S.C.

16   § 2710(b)(1).

17    On December 6, 2024, Defendant filed the Motion, seeking to compel Plaintiff

18   to arbitrate this case pursuant to the arbitration provision found in the TOS accessible

19   on Defendant's biglittlefeelings.com website. (ECF No. 10.)

20

---

3

### III.   LEGAL STANDARD

"It is axiomatic that '[a]rbitration is a matter of contract,'" and thus "'a party cannot be required to submit any dispute which he has not agreed so to submit.'" *Sanford v. MemberWorks, Inc*., 483 F.3d 956, 962 (9th Cir. 2007).  As such, "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court," the party moving to compel arbitration – here, Defendant - must first prove the existence of "an express, unequivocal agreement to that effect."  *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., In*c., 925 F.2d 1136, 1140-41 (9th Cir. 1991); *see also Boardman v. Pac. Seafood Group*, 822 F.3d 1011, 1017 (9th Cir. 2016) (in deciding a motion to compel arbitration, the Federal Arbitration Act ("FAA") requires that a court determine "whether a valid agreement to arbitrate exists").

In deciding motions to compel arbitration, courts "should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist.,* 925 F.2d at 1140-41.  "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id.*

### IV.   ARGUMENT

Defendant contends that Plaintiff assented to the TOS (and its incorporated arbitration provision) by clicking the "'Checkout' button" on its biglittlefeelings.com website.  ECF No. 10 at 11.  As a fallback, Defendant argues that "after Plaintiff placed

1    her order, she received two separate emails providing the login link for her course" and

2    in those emails, Plaintiff was advised that logging in would demonstrate her assent to

3    Defendant's TOS.  *See id.*  Neither ground is availing.

4         "When deciding whether the parties agreed to arbitrate a certain matter[,] courts

5    generally . . . should apply ordinary state-law principles that govern the formation of

6    contracts."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also*

7    *Hergenreder v. Bickford Senior Living Grp., LLC,* 656 F.3d 411, 417 (6th Cir. 2011).

8    Under California law,[1] four elements are "essential to the existence of a contract": (1)

9    parties "capable of contracting"; (2) "[t]heir consent"; (3) a "lawful object"; and (4)

10   "sufficient cause or consideration."   Cal. Civ. Code § 1550; *Norcia v. Samsung*

11   *Telecommunications Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017) (citing these

12   "essential elements of a contract" as "basic principles of California law").   Each

13   element must be satisfied "at the time of contracting." *Porreco v. Red Top RV*

14   *Center,* 216 Cal. App. 3d 113, 119 (1989).  In determining whether each element is

15   satisfied, the Court should give the party opposing arbitration "the benefit of all

16   reasonable doubts and inferences that may arise."  *Three Valleys Mun. Water Dist.,*

17   925 F.2d at 1140-41.  "If there is doubt as to whether such an agreement [to arbitrate]

18   exists," the movant has failed to carry its burden and arbitration must be denied.  *See*

19   *id.*

20   _____

[1]    Both Defendant and Plaintiff are residents of California.

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

1   As explained below, prior to making her purchase on Defendant's website using

2   her mobile device, Plaintiff was not provided the requisite clear and conspicuous notice

3   that she was agreeing to be bound by the TOS by pressing the "Checkout" button on

4   the checkout screen of Defendant's website.  And the post-purchase emails Defendant

5   sent her did not contain, unlike what the Motion would have the Court believe, any

6   reference or hyperlink to the TOS, much less any statement that, by signing in to her

7   account on Defendant's platform in the future, she was agreeing to be bound by the

8   TOS.

9   **A. Defendant has Failed to Satisfy its Burden of Establishing that Plaintiff Assented to the TOS by Placing an Order on its Website**

10
11   First, Defendant has failed to establish that Plaintiff agreed to be bound by the

    TOS by placing an order on Defendant's website.

12
13   According to Defendant, Plaintiff manifested her assent to the TOS by placing

    an order on its website on January 10, 2023, and in support relies entirely on the

14
15   following portion of the checkout screen that would have displayed on the desktop

    version of Defendant's website:

16
17   

18   *See* Declaration of Lisa Carll, ECF No. 10-1, ¶ 6.

19   As a threshold matter, the Court is required to consider the totality of the

20

6

website's presentation to determine whether a "reasonably prudent user would have inquiry notice of," i.e., would have received clear and conspicuous notice of, the TOS. *See Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1176 (9th Cir. 2014) ("In short, the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design all contribute to whether a reasonably prudent user would have inquiry notice of a browsewrap agreement."); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016) ("Whether there was notice of the existence of additional contract terms presented on a webpage depends heavily on whether the design and content of that webpage rendered the existence of terms reasonably conspicuous."); *Route App, Inc. v. Heuberger*, No. 2:22-CV-291-TS-JCB, 2022 WL 2316377, at *3 (D. Utah June 28, 2022) ("To determine whether sign-in-wrap and browsewrap agreements are enforceable, courts engage in fact-intensive inquiries of the layout and language of a website or application.").

In cases involving smartphone or online-based contracts, "[c]ourts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract ... as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017). However, courts should not "presume that a person who clicks on a box that appears on a computer screen has

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

1    notice of all contents not only of that page but of other content that requires further

2    action (scrolling, following a link, etc.)  Indeed, a person using the Internet may not

3    realize that she is agreeing to a contract at all, whereas a reasonable person signing a

4    physical contract will rarely be unaware of that fact." *Sgouros v. TransUnion*

5    *Corp*, 817 F.3d 1029, 1034-35 (7th Cir. 2016).

6        In this case, based on Defendant's placement of the statement referencing the

7    TOS below the button, coupled with the statement not being displayed on Plaintiff's

8    mobile device when the screen loaded (and instead requiring that the screen be scrolled

9    down to display the statement), there is no question that "the layout and language" of

10   the page fails to "give the user reasonable notice that a click [on the Checkout button]

11   will manifest assent to [the TOS or its incorporated arbitration provision]." *Meyer*,

12   868 F.3d at 75.  Contrary to what Defendant says in the Motion, Plaintiff did not use a

13   desktop computer to place her order on Defendant's website on January 10, 2023 – she

14   used a mobile device.  *See* Declaration of Jennifer Carruth (the "Carruth Decl."), ¶ 2,

15   attached hereto as **Exhibit A**.  And, when the checkout screen loads on a mobile

16   device, it does not display any content that exists below the button.  *See* Declaration of

17   Frank Hedin (the "Hedin Decl."), ¶ 3, attached hereto as **Exhibit B**.  Rather, for the

18   text below the button to become visible to Plaintiff (or to any other visitor on a mobile

19   device), Plaintiff (or any other visitor on a mobile device) would have been required

20   to scroll below the button prior to pressing the button – even though there would have

8

been no need for Plaintiff (or any other reasonable visitor to the website) to do so prior to pressing the button to complete the checkout process. *See* Hedin Decl., ¶ 4.

Indeed, in support of this opposition brief, Plaintiff submits a screenshot depicting the checkout screen as it would have appeared to her upon being loaded on her mobile device:



*See* Hedin Decl., ¶ 3. And, a second screenshot Plaintiff submits shows that the text below the button would only have displayed if she scrolled down on this screen prior to pressing the "Checkout" button, as shown below:

9

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION



1

2

3

4

5

6

7 *See* Hedin Decl., ¶ 4.

8    Because the statement below the button was neither clearly nor conspicuously

9 presented to visitors, Plaintiff's act of "clicking '[Checkout]' d[id] not specifically

10 manifest assent to the additional terms, for [she] [wa]s not specifically asked whether

11 she agrees[,] [n]othing about the '[Checkout]' button alone suggests that additional

12 terms apply, and the presentation of terms is not directly adjacent to the '[Checkout]'

13 button so as to indicate that a user should construe clicking as acceptance." *See*

14 *Nicosia,* 834 F.3d at 236–37 (declining to find a consumer had formed an agreement

15 to arbitrate with the defendant on facts strikingly similar to those in this case).

16    Notably, several courts have recently declined to hold website terms enforceable

17 against visitors of similar web pages, where, similar to Defendant's checkout page, the

18 disclosure statement (stating by clicking the button the visitor was agreeing to the

19 terms) appeared in fine-print at the bottom of the webpage, below the button, and where

20 nothing alerted users that further terms appeared below the button. For example, in

10

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

*Sullivan v. All Web Leads, Inc.*, No. 17 C 1307, 2017 WL 2378079 (N.D. Ill. June 1, 2017), the court refused to find an agreement was formed where the plaintiff clicked a submission button on a website, where the disclosure statement concerning the terms appeared below the button, and where the website required the visitor to scroll down to even arrive at the submission button. The court explained:

> In this case, after Sullivan input his personal information, he clicked the "Submit" button immediately below the end of the health insurance quote form without scrolling down further to the bottom of the webpage to read All Web's Lilliputian consent language. In these circumstances, the Court thinks it "reasonable for users to assume that their click merely constituted their assent to [an] authorization" submitting their personal information further to getting a health insurance quote. *Sgouros*, 2015 WL 507584 at *5. . . . Given the website's silence on quotes proceeding by phone and failure to alert users that legal disclosures appear below the "Submit" box, the Court cannot, while drawing inferences in Sullivan's favor, find that All Web's alleged consent mechanism gave Sullivan reasonable notice sufficient for an enforceable written "agreement[.]"

*Sullivan*, 2017 WL 2378079, at *8. On similar facts, the court in *Gaker v. Citizens Disability, LLC*, No. 20-CV-11031-AK, 2023 WL 1777460 (D. Mass. Feb. 6, 2023), reached the same conclusion, explaining:

> The terms indicating that users who submitted their information on the Super-Sweepstakes website consented to be contacted by the site's marketing partners were printed in small font at the very bottom of the page. The Court accord[s] significant weight to the fact that the terms appeared below the "CONFIRM YOUR ENTRY" button, [] such that a user could—and in all likelihood, would—click on the button without ever reaching the portion of the page disclosing the terms. . . .

11

[T]he mere presence of this disclosure on the webpage is insufficient to establish that the website reasonably notified the user of the terms. The totality of the page, including the size and color of the font and particularly the placement of the disclaimer at the bottom of the page, where a user who simply scrolled to the "CONFIRM YOUR ENTRY" button and clicked on it would never have seen it, strongly indicates an intent to distract a reasonable user from the language. Accordingly, Citizens has not established that it reasonably notified the user of the terms, nor that it gave the user the opportunity to review those terms prior to clicking "CONFIRM YOUR ENTRY."

*Gaker*, 2023 WL 1777460, at *7–8 (quotations and citations omitted).

Numerous other decisions from courts throughout the country are in accord. *See e.g., Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17 (2d Cir. 2002) (where an online service made available to consumers "at the immediate click of a button" was purportedly governed by license terms that appeared at the bottom of the screen, the court rejected the defendant's bid to enforce the license terms against a consumer who had clicked the button, explaining that "a submerged screen . . . is not sufficient to place consumers on inquiry or constructive notice of those terms," because "there is no reason to assume that viewers will scroll down to subsequent screens simply because screens are there"); *Sgouros*, 2015 WL 507584, at *6-7 ("It is unreasonable to expect users to scroll down the Window when they are not aware of a possibility of being bound by the terms in the Window."); *IT Strategies Grp., Inc. v. Allday Consulting Grp., L.L.C.*, 975 F. Supp. 2d 1267, 1280 (S.D. Fla. 2013) ("a reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

1  or constructive notice of those terms."); *Daschbach v. Rocket Mortg., LLC*, No. 22-

2  CV-346-JL, 2023 WL 2599955, at *8 (D.N.H. Mar. 22, 2023) (same conclusion);

3  *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), *aff'd*, 380 F.

4  App'x 22 (2d Cir. 2010) (finding the plaintiff "lacked notice of the Terms and

5  Conditions because the website did not prompt her to review the Terms and Conditions

6  and because the link to the Terms and Conditions was not prominently displayed so as

7  to provide reasonable notice of the Terms and Conditions."); *c.f., e.g., Feldman v.*

8  *Google, Inc.,* 513 F.Supp.2d 229, 236 (E.D. Pa. 2007) (finding reasonable notice of a

9  clickwrap agreement where users did not need to scroll down to a submerged screen to

10  see the terms, and the web page had "a prominent admonition in boldface to read the

11  terms and conditions ... and indicate assent" that made the text of the agreement

12  immediately visible to users).

13      This Court should reach the same conclusion.  Because "there is no reason to

14  assume that [visitors to Defendant's checkout page on a mobile device] will scroll

15  down to subsequent screens" below the "Checkout" button, *Specht*, 306 F.3d at 32, and

16  because "a user could—and in all likelihood, would—click on the button without ever

17  reaching the portion of the page disclosing the terms," *Gaker*, 2023 WL 1777460, at

18  *7–8, the Defendant's mobile checkout screen, like the screens at issue in *Specht*,

19  *Gaker*, *Sullivan*, and *Sgouros*, failed to "place [Plaintiff or any other] consumers on

20  inquiry or constructive notice of those terms."  *See Specht*, 306 F.3d at 32.

13

1   Accordingly, Plaintiff's (or any other consumer's) click on the Checkout button on a

2   mobile device failed to manifest her (or any other consumer's) assent to the arbitration

3   agreement found buried in the TOS. *See id*.

4       Even if the statement below the Checkout button on Defendant's checkout

5   screen appeared on visitors' screens when the page loaded, such that scrolling past the

6   button was not required for it to become visible, the statement below the button would

7   still not constitute the "clear and conspicuous" notice required to obtain visitors' assent

8   to the TOS. For example, in *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y.

9   2015), where the defendant's website had language *directly above* a sign-in button that

10  stated, by signing in the user agreed to the terms of use, the court held that the

11  disclosure was nonetheless "insufficient to give adequate notice," *Berkson*, 97 F. Supp.

12  3d at 404, because the "hyperlink to the 'terms of use' was not in large font, all caps,

13  or in bold," especially in contrast to the "user-friendly and obvious" "'SIGN IN'

14  button" that appeared "in all caps." *Id.* Accordingly, the court concluded that this

15  "sign-in contract of adhesion" was "not binding on [plaintiff]." *Id.*; *see also, e.g.,*

16  *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 466-67 (S.D.N.Y. 2017) (though

17  defendant required plaintiff to click a "box" next to hyperlink with the defendant's

18  terms of service, the court concluded that plaintiff was not put "on inquiry notice of

19  the terms of service," because the page featuring the clickable box featured a much

20  larger "'Next' bar at the bottom of the screen," which "dwarfed" the "I agree to Lyft's

14

1    Terms of Service" language that is featured in "smallest font on the screen," such that

2    "[a] reasonable consumer would not have understood that the light blue 'Terms of

3    Service' hyperlinked to a contract for review").

4          Similarly, in *Nicosia v. Amazon.com, Inc.,* where the defendant's order page,

5    similar to the checkout page here, stated that "by placing your order, you agree to

6    Amazon.com's privacy notice and conditions of use," *Nicosia*, 834 F.3d at 237, the

7    Second Circuit found that, given the manner in which the statement appeared on the

8    order page, the defendant had "failed to show that [the plaintiff] was on notice and

9    agreed to mandatory arbitration as a matter of law" when she clicked a "Place your

10   order" button.  The court explained its reasoning as follows:

11            Near the top of the page, below the "Review your order" heading, the
              critical sentence appears in smaller font: "By placing your order, you
12            agree to Amazon.com's privacy notice and conditions of use." Add.
              B. The phrases "privacy notice" and "conditions of use" appear in
13            blue font, indicating that they are clickable links to separate
              webpages. The body of the page summarizes the user's purchase and
14            delivery information. Among other things, users are shown their
              shipping address, billing address, and payment method, and given the
15            option to edit that information or "try Amazon Locker." Users are
              also given the opportunity to change the delivery date, enter gift cards
16            and promotional codes, and sign up for "FREE Two–Day Shipping
              with a free trial of Amazon Prime." The Amazon Prime promotion
17            features the words "FREE Two–Day Shipping" four times in the
              center of the page, appearing in orange, green, and black fonts, and
18            in white font against an orange banner. On the right side of the page
              appears a "Place your order" button above a box with the heading
19            "Order Summary." The Order Summary box lists the cost of the items
              to be purchased, shipping and handling costs, total price before tax,
20            estimated tax to be collected, purchase total, gift card amount, and

---

15

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

order total. The words "Order total" appear in bold, red font. A large area in the center of the page has been redacted, but presumably features a picture of the product being purchased, its name, price, quantity, stock and seller information, and gifting options. Near the bottom of the page, there are a number of sentences in faint, black font directing users to links to other Amazon webpages for additional information, such as tax and seller information, customer assistance pages, and product return policies. At the very bottom of the page, links to the Conditions of Use and Privacy Policy appear again in blue, next to Amazon's copyright notice.

. . .

The message itself—"By placing your order, you agree to Amazon.com's ... conditions of use"—is not bold, capitalized, or conspicuous in light of the whole webpage. *Cf. Starkey v. G Adventures, Inc.*, 796 F.3d 193, 197 (2d Cir. 2015) (multiple bolded, capitalized headings alerting customers of terms and conditions was sufficiently reasonable notice). . . . There are numerous other links on the webpage, in several different colors, fonts, and locations, which generally obscure the message. . . . Although it is impossible to say with certainty based on the record, there appear to be between fifteen and twenty-five links on the Order Page, and various text is displayed in at least four font sizes and six colors (blue, yellow, green, red, orange, and black), alongside multiple buttons and promotional advertisements. Further, the presence of customers' personal address, credit card information, shipping options, and purchase summary are sufficiently distracting so as to temper whatever effect the notification has.

*Nicosia*, 834 F.3d at 236–37 (citing *Nguyen*, 763 F.3d at 1179 ("Given the breadth of the range of technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound.")).

Same here. Even if Defendant could establish that a particular visitor scrolled

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

1  below the button (and it cannot), the presentation of the statement below the button –

2  in small black font (much smaller than the surrounding text, much of which is in bold)

3  against a greyscale background, and dwarfed by the large "Checkout" button (as well

4  as the other much larger text on the screen, including in red font) – nonetheless falls

5  far short of the "clear and conspicuous" notice required for the Court to conclude that

6  Plaintiff manifested her assent to the TOS when she clicked the button.

7         As the Ninth Circuit has explained, "web designer[s] must do more than simply

8  underscore the hyperlinked text in order to ensure that it is sufficiently "set apart" from

9  the surrounding text." *See Berman v. Freedom Fin. Network, LLC,* 30 F.4th 849, 857

10  (9th Cir. 2022).  And, where they fail to do so, courts do not hesitate in finding such

11  pages insufficient to provide reasonably conspicuous notice.  *See Cullen v. Shutterfly*

12  *Lifetouch, LLC*, No. 20-CV-06040-BLF, 2021 WL 2000247, at *8 (N.D. Cal. May 19,

13  2021) (finding defendant failed to carry its burden to prove assent to arbitration stating:

14  "The subject language is in tiny print, that appears to be light gray in color, and there

15  is no header or other indicator that would notify an individual of important contractual

16  terms."); *Redbox Automated Retail, Inc.*, No. 19-cv-01993 at 15 (ECF No. 32) (N.D.

17  Ill. Mar. 25, 2021) ("[T]he Court finds the gray disclosure text surrounding the

18  hyperlinks not reasonably conspicuous because there is insufficient contrast between

19  the gray text and the black background."); *Colgate v. JUUL Labs, Inc.*, 402 F. Supp.

20  3d 728, 766 (N.D. Cal. 2019) (hyperlinks insufficient where "[t]hey are not underlined

17

[and] they are the same size as the sentence they are in."); *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 885 (N.D. Ill. 2020) ("Redbox's failure to add some additional distinguishing characteristic to the Terms of Use hyperlink is particularly glaring here"); *Fisher v. Sutton Place/Pinnacle A.M.S.*, No. 1:07-CV-1537-DFH-WTL, 2008 WL 2095417, at *2 (S.D. Ind. May 16, 2008) ("The fact that the agreement imposes an obligation to arbitrate disputes is clear and prominent. This was not an arbitration agreement buried in small, light-gray type on the back of an invoice or purchase order. No literate person completing and signing the form could have missed the agreement to arbitrate, which is the subject of five of eight pages in the document."); *Treinish v. iFit Inc.*, No. CV 22-4687-DMG (SKX), 2023 WL 2230431, at *4 (C.D. Cal. Feb. 2, 2023) (rejecting the use of underlining alone to identify a hyperlink, including where, similar to here, the defendant's "hyperlinks are underscored, but in a smaller [font] that is the same color as the rest of the text[.]"), *appeal dismissed*, No. 23-55207, 2023 WL 5674594 (9th Cir. Aug. 4, 2023); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 481, 289 Cal. Rptr. 3d 1, 29 (2021) (finding no contract where "[t]he textual notice . . . appears in smaller print than any other print on the page and in a grey shade that contrasts with the dark background significantly less than the other text on the page."); *Ramirez v. Trusper, Inc.*, No. 5:24-CV-02012-EJD, 2024 WL 4479862, at *5 (N.D. Cal. Oct. 11, 2024); *Berman v. Freedom Fin. Network, LLC,* No. 18-CV-01060-YGR, 2020 WL 5210912, at *3 (N.D. Cal. Sept. 1,

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

1   2020) ("[T]he phrase 'I understand and agree to the Terms & Conditions which

2   includes mandatory arbitration and Privacy Policy' is formatted in black font against a

3   white background which is exceedingly small compared to the larger, more colorful

4   and high-contrast fonts on the rest of the page, making it difficult to read on a large,

5   high-resolution monitor, much less a mobile device.").

6        The statement appearing below the button in this case is even less conspicuous

7   than the disclosure statements appearing on other websites that courts have found

8   insufficient to manifest a visitor's assent to any contractual terms. For example, in

9   *Colgate v. JUUL Labs, Inc.*, the language appearing below the button, as shown below,

10  was held not to have provided visitors with reasonably conspicuous notice:

11



20  *See Colgate*, 402 F. Supp. 3d at 766. The court concluded that because "JUUL's

19

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

1   hyperlink on its Earlier Sign-Up Page was not highlighted, underlined, in all caps, or

2   in a separate box [then] [i]t would not have served to put a reasonable user of the

3   internet on inquiry notice of the arbitration provision."

4       This Court should reach the same conclusion here.  Even if Plaintiff had placed

5   her order using a desktop device and encountered the sign-up flow Defendant relies

6   upon in the Motion – which, again, she did not – Plaintiff still did not receive clear or

7   conspicuous notice of the TOS (much less clear or conspicuous notice that by clicking

8   the "Checkout" button she was agreeing to be bound by the TOS).  *See e.g., Berman*,

9   30 F.4th at 868 (finding that courts consider, among other things, "the transactional

10  context, the notice's size relative to other text on the site, the notice's proximity to the

11  relevant button or box the user must click to complete the transaction or register for

12  the service, and whether the notice's hyperlinks are readily identifiable.").[2]  The Motion

13  should be denied.

14  _____

15  [2]      Neither of the authorities cited in the Motion supports the existence of a binding arbitration agreement.  Defendant relies on two unpublished Ninth Circuit panel decisions: *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) and *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020).  *Dohrmann* is distinguishable on its face

16  because, in describing the subject interface, the Court noted the presence of an italicized offset from other language on the site, which effectively notified the plaintiff of the site's terms.  By

17  contrast here, Defendant's hyperlink was inconspicuous, submerged, and obscured by the URL window, all of which suggest it was plainly designed *not* to communicate notice.

18  Similarly, *Lee* is even more distinguishable because the relevant language in that case "was displayed in blue font and contained a hyperlink to Ticketmaster's Terms."  The plaintiff in

19  *Lee* had also been presented the blue font, underlined, and hyperlinked Terms roughly twenty times during the relevant period. None of these facts are present here.  Thus, Defendant's

20  website is nothing like the Ticketmaster website reviewed in *Lee*.

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

**B. Defendant has Failed to Satisfy its Burden of Establishing that Plaintiff Assented to the TOS by Receiving E-Mails from Defendant and Thereafter Signing into Defendant's Website**

As a fallback argument, Defendant argues that Plaintiff agreed to arbitrate by signing into Defendant's website following her receipt of two post-purchase e-mails she was sent that contained a hyperlink to the TOS. ECF No. 10-1 at ¶ 9. The argument is completely without merit.

The emails Defendant submits in support of the Motion were never actually sent to, much less received by, Plaintiff. *See* Carruth Decl., ¶¶ 3-5. In reality, as Plaintiff explains in the declaration she submits in support of this brief, she received three emails from Defendant on January 10, 2023, none of which referred to, let alone linked her to the TOS, as Defendant falsely asserts. *See id.*

Moreover, the screenshots of the emails that Defendant submitted in support of the Motion are redacted, undated, templated, and have no inherent indicia of reliability – and, as previously stated, were never received by Plaintiff. *See e.g.*, *Saeedy v. Microsoft Corp.*, No. C24-0219-SKV, 2024 WL 4945106, at *23 (W.D. Wash. Nov. 21, 2024) (refusing to compel to arbitration a plaintiff that disaffirmed receiving the Microsoft terms). Defendant cites to the decision in *Ghazizadeh v. Coursera, Inc.*, No. 23-CV-05646-EJD, 2024 WL 3455255 (N.D. Cal. June 20, 2024), as supposed support for its argument that Plaintiff assented to the TOS by logging into her account after receiving the emails described in the Motion. But *Ghazizadeh* is readily

21

distinguishable. There, unlike here, the plaintiff offered no evidence to rebut the defendant's evidence that the plaintiff received the email in question. Here, Plaintiff disputes having received the contents of the emails in Lisa Carll's declaration, and Plaintiff has supported her position with documented evidence in the form of the emails that she actually received.[3]

There is thus no merit in Defendant's bid to compel Plaintiff to arbitrate based on the emails submitted in support of the Motion. The Motion should be denied.[4]

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: January 9, 2025                    Respectfully submitted,

                                          /s/ Frank S. Hedin

                                          **HEDIN LLP**

                                          Frank S. Hedin
                                          535 Mission Street, 14th Floor
                                          San Francisco, CA 94105
                                          Telephone:  (305) 357-2107
                                          Facsimile:  (305) 200-8801
                                          fhedin@hedinllp.com

---

[3]      In the unlikely event the Court finds that a genuine dispute of material fact exists as to which emails were actually sent to and received by Plaintiff, Plaintiff respectfully requests a summary trial under the FAA following the necessary discovery on the issue. 9 U.S.C. § 4 ("If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof."); *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021).

[4]      Having failed to establish that the TOS constitutes a duly formed agreement between the parties, Defendant's request for the Complaint's class allegations and jury trial demand to be stricken based on the class action and jury trial waivers found in the TOS likewise fails.

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

1

*Attorney for Plaintiff and Putative Classes*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

PLAINTIFF JENNIFER CARRUTH'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION